My name is Bill Britton. I represent the defendant, JBS Carriers, and the estate of Mr. Thompson in this matter, the defendants in the case below. As this court is aware from the pleadings, a judgment was entered against my clients on two separate claims in the trial court. One was a claim for wrongful death by the estate. The other was a claim for, under the and not necessarily as the administrator of the estate. We believe that there were errors in both verdicts and we ask that we're going to be asking for a new trial today or at a minimum a diminishment of the damages that were awarded on those claims. Now I understand that the court has read the briefs and understand the factual background, but I need to go through a short recitation of the facts to understand why the defendants were prejudiced, so prejudiced by the entry of the evidence below and the jury instructions that were submitted to the jury. This accident happened on... Before you get into it, we're familiar with the circumstances of the accident. Before you get into this, one of your lead points has to do with the jury instruction on mitigation of damages. That is one of the, yes. How... I was troubled by not seeing any mention of the district court's instructions 33 and 38 in your opening brief and your assertion that you could not argue mitigation, when in fact the district judge gave instructions and you argued that issue. And yes... What did I miss? What the instructions submitted by the trial court. My question is why did you not even mention instruction 33 and 38, the trial court's mitigation instructions, in trying to claim that there had been some terrible miscarriage of justice here? I think that we attempted to direct this court to the record on appeal in an attempt to do that. Where did I miss that? In our opening brief, your Honor? Yes. Maybe I did. I thought we referenced to the jury instructions themselves, as opposed to citing the entirety of the jury instruction in the brief. Now, I believe that... Let me put it this way. I got through your opening brief with the impression that the district judge gave instruction and had not allowed you to argue it. And I apologize for the oversight. The district court did instruct on mitigation. And I believe that that is part of the record. Oh, it's very much a part of the record. Absolutely. Certainly. And the objection we have with regards to the mitigation, which is obviously just one of the numerous objections that we have, is that the court refused to give the instruction stating that the plaintiffs had a legal obligation and had a duty to mitigate their damages. If you have an issue, it's on the difference in language between the pattern instruction and the instructions given by the district court, right? Agreed. I don't see that addressed at all in your opening brief. In our opening brief, we at least attempted to argue that the IPI instruction, which we believe should have been given, is different in the language. And the difference makes a difference, because it talks about the plaintiffs having a duty to mitigate their damages. Now, that issue is, in our minds, only one and basically a minor issue. In terms of the jury instruction. Wasn't that the one you led off with in your brief? I believe that was one we may have initially led off with, but it was led... You can't initially lead off. You either lead off with something or you don't. And we led off with that one. You led off with that argument. That argument is a non-starter under Mayor Against Gary State. State law governs substance, but there's no state that can tell a federal court what language to give in an instruction, right? So the question would be, were the actual instructions incorrect statements of Illinois law? And like Judge Hamilton, I can't see that contention. On the mitigation. Yes. The other instructions, though... And you agree, you don't make that contention. I can't find it. Is there someplace you want to point me to? Well, I think we make the argument that we believe that the mitigation, we argue that mitigation instruction was more an issue of state law. But if the court... It is completely inappropriate to make an argument like that in the teeth of circuit law, which you do not cite. The other side responded that this is a question of procedural law and you didn't reply. But I think as a result of communications issues, Judge Rovner has been trying to get a question in and we've been talking here. So, Judge Rovner, I want to make sure that you get heard. Well, that's so kind. It was exactly what you all were talking about, because I certainly didn't understand why the defendant believes they, you know, it was denied the opportunity to argue about the duty to mitigate in closing. But I think we're past that. So I want to now talk about the contribution claim. There, the district court found there was no evidence that the decedent's son contributed to his own damages in his rescue doctrine claim. And you didn't respond to the court's finding that there's no basis in Illinois law to transfer the father's contributory negligence to the son. So I'm wondering, is there any Illinois case that contradicts the district court on that point? On that point, Your Honor, I believe that what we are asking today is that we are not asking that the 45% be attributed to offset the actual judgment by Ed and Kerhotzik on his individual claim. What we're asking for is judgment against the estate on our contribution claim for the 45%. And that is based on the simple contribution statute. If a defendant is bound to pay more than its fair share of a judgment, it has a right of contribution against a third party. And in this case, what the jury found was that both parties were responsible for causing the accident, which arguably led Ed and Kerhotzik to attempt to rescue his father. Arguably led? It led him to... You must have thought about this far more than we have. I have. It was a very difficult and very emotional case. It caused him to go back, and I say arguably only because, Your Honor, in reality we know now that his father was dead. And I know that now. And we all know that now. But at the time, obviously, Ed was not aware of that. So he went back to try and rescue his father, which was the basis for the rescue claim. And Judge Rovner, that's what we're asking the court to do today, is to remand to the trial court on the contribution claim, assuming that nothing else goes back and there's no other relief granted, and enter judgment in favor of the defendants and against the 45% of Ed's individual claims. Could you show us on the contribution issue, counsel, where, with the various stipulations of dismissals, you reserve the right to pursue this claim? Well, Your Honor, I think the stipulation of dismissal is document 59. And the order of dismissal is document 61. Document 59 indicates that the dismissal is of to be JBS's amended complaint against the estate, as well as EJA Trucking. But why doesn't that dismissal apply to any claims that could have been asserted the way we would normally apply with respect to claim preclusion, unless you specifically reserve, as was done with a number of different claims back and forth by the multiple parties? I disagree with the court, because what happened here procedurally is set out in our reply brief. The initial claim was brought by JBS for its property damage against the estate and EJA Trucking. After that, there was a flurry of pleadings back and forth, counter claims and cross claims. And ultimately, what was agreed upon was that JBS, JBS only, would dismiss its amended complaint seeking its damages against EJA and the estate. That was the only thing that was dismissed. Well, at that point, you had to know you had a potential contribution claim, right? I believe, yes, it was on file at that point, yes. I'm sorry, which was on file? The contribution claim against the estate. And where was that asserted? It was asserted in document 33 by JBS. What happened was JBS obviously was the initial plaintiff in the case, so it was initially in the case. But Mr. Thompson wasn't brought in until later. Mr. Thompson's counterclaim against the estate is document 47. So the counterclaims against the estate were brought in two different documents by my two clients. So in your position, then, is all we dismissed, all JBS dismissed, is what was asserted in its amended complaint, not other claims that were on file? That's right. And I think that's what document 61 demonstrates, that only the amended complaint was dismissed. Nothing else. There was, if you look at the stipulation, you'll see that Mr. Neeson's firm was not a party to that. Only the party representing EJA was a party to that stipulation. And the order by the court only dismissed the amended complaint. So the counterclaims were still on file. Well, still active, if you will, at the time of the trial. And at the time, at the end of the trial, when we requested that the court enter judgment, because after the trial, the court had us brief this issue, and we sought a judgment against the estate for the 45%. It's a straight-up contribution claim. I think the court believed that somehow the Rescue Doctrine was an exception to the Contribution Act. We disagree. Where did you address the Rescue Doctrine issue in your brief? We addressed the contribution claim. It's usual, though, to address the rationale of the decision that you're attacking. The district court down below in the order entered post-trial only addressed the issue about whether, at least my interpretation of the order was that he was not going to offset the 45% against Eden's individual claim. We know he ruled we address it in this way. He believed that there was nothing in the Rescue Doctrine that allowed to offset Eden's individual claim. That was not what we were requesting, and that's not what we're requesting from this court. I wish you would address my colleague's question. And I'm attempting to. You haven't. He is asking, and I would like to hear, where in your brief you address the rationale. I see where in your brief you give your rationale. I'm interested in where you respond to the district judge's rationale. This is a requirement of appellate advocacy. And I'm attempting to in this way. I think in our brief we address it in this way. The district court said there is nothing in the Rescue Doctrine that requires to offset the Eden's. That was not what we requested. I know that's not what you requested. It's not what we're requesting from this court. You're just not addressing the question. And I apologize. It's only that I believe that the district court either did not understand or misunderstood what relief we were requesting. I'm looking, I think my colleagues and I, the district judge might have been right, might have been wrong. We are generally open to the idea that district judges might have made a mistake. It would be rare for a district judge to make as many mistakes as you assert in your briefs, but that's a separate matter. But to preserve an issue for appellate review, we usually expect an advocate to address the rationale actually offered by the district court rather than to bypass it and hope that the power of your own reasoning will lead us to conclude that there was an error. Yes. And what I am trying to convince the court, or at least address the court, is that the district court reviewed this, as I understand it, as an issue regarding the Rescue Doctrine. And whether somehow our request was an exception to the Rescue Doctrine. And our position is that it is not. Okay. Thank you very much, counsel. Mr. Neeson. Yes, Your Honor. May it please the court, my name is Frank Neeson III. I represent the plaintiff, Eden Karahodzic, in both of his capacities in this case. I'd like to lead off with talking about this contribution claim where you all left off. Just to clarify a little bit, the district court did actually ask us to brief the issue on, the main argument they made after the trial was they were entitled to an offset for Eden's particular judgment for the 45%. And then sort of a backup argument, if you will, was, well, and if we don't win that we should get a contribution judgment against the estate. And we tried to respond to the arguments presented in their brief. I think they don't get contribution for many reasons. Number one, I think they dismissed it. Where? In that particular dismissal, they talk about what is reserved. But if all that's dismissed was what was in the amended complaint, and the other, the cross-claim or counter-claim was in a separate pleading, I don't see that. That was, yes, that was kind of interesting. We did not participate in that dismissal memo because we kept getting memos that said mutual dismissal claims, and the estate wasn't dismissing anything. So I finally just said, we're not dealing with this, we're not signing it. There was counsel for EJA Trucking, which is my driver's trucking company, and also the estate who, it covered Hasid Karadzic. After that settlement, Mr. Keith Henson, who had represented EJA and the estate, got out of the case. Now they're trying to say now, well, no, we didn't settle that. This is not in the record, Your Honor, but there's a settlement agreement that's- If it's not in the record. I'll leave it alone. But on top of that, in our brief, we get into why the contribution claim fails under Missouri probate law. They've had many opportunities to- That's not really very persuasive. I mean, we've looked into that, and as near as I can tell, you're trying to tell us both that the contribution claim was not ripe and was stale, and I don't think that can be. I understand. But- Could I? Yeah. Could I? I don't know. I'm getting mixed up over here, but on the contribution claim, the plaintiffs argued that JBS's counterclaim against the estate was dismissed, right? Yes. In reply, JBS says that the only claim that was dismissed was the one for property damage, and that a claim for contribution remained viable, right? That is what they say. That's what they say. All right. So help me. Can you respond to that argument? And like I said earlier, Your Honor, in the dismissal, it does say in the amended complaint, and it also says this is what we are reserving and what has not been dismissed. In the portion that says this is what is reserved and is not dismissed, the contribution claim does not appear. It's very clear in that document. And yeah, that is, that's the gist of that. Now with respect to the probate statutes, there's a one-year bar. Missouri Statute 473-444, which is basically just, it chops off all claims against an estate after a year after the person's death. And that would include someone who had a judgment against the person while they were still alive. If they don't file that claim within the year after that person dying, they're completely barred from making the claim. In this case, JBS or Mr. Thompson, they have never filed a claim ever. So I believe with respect to that, that essentially puts the contribution aspect to rest. The Missouri Supreme Court, in a case called Vanderbeck, seems to have held that those statutory restrictions don't apply if the money is not going to flow through the estate. And here it would simply be accounting entries. And that's a good point. What are they getting if they get a judgment against the estate? Because the money in this case would never go into the estate. The estate is essentially under Illinois Wrongful Death, the Illinois Wrongful Death Act is created as a vehicle to bring the, in this case, the surviving spouse and three children's claims for the wrongful death of their husband and father. Now after the trial, we had a distribution hearing under Illinois law. And as a part of that hearing, the judge said, okay, we're going to divvy the money up in this fashion. So the money goes directly to the beneficiaries. It never passes through the estate. So I mean, essentially, even if they were to get a contribution, what does that get them? It doesn't really get them anything unless they're going to go back after Star Insurance Company. It would subtract a couple of hundred thousand dollars from the amount paid to the estate, and it would go to Mr. Eden Karadzic. I don't think that's correct, Your Honor. I don't think so. Because the money itself would never go into the estate. The money never goes to the estate. The money goes to the beneficiaries directly as a result of the distribution hearing that's already been held. So the estate is essentially... Were the defendants a party to that hearing? Oh yeah, they were there, absolutely. And yeah, so the only thing that would essentially potentially get them is a claim against Star Insurance Company, which I think they might have problems with based on their previous settlement with them. But... I don't... What's the interplay here between the Illinois Contribution Act and the Rescue Doctrine claim? I really don't know, Your Honor. I didn't address it because it didn't come up in the appellant's brief. See, they have that argument that the Illinois Contribution Act allows the contribution claim against the estate here. So that's why I was, you know, wondering about that. Right. And like I said before, I don't think they have the ability to do that at this point against our estate, which again, has no money, will never have any money, merely has or at some point had insurance to back up this accident in and of itself. I'm a little confused by your saying the estate will never have money, given that there's a judgment for some two and a half million dollars. It never goes through the estate. Well... Why? I mean... Well, let's analyze that. In these types of cases, under the Illinois Wrongful Death Act, the estate is the vehicle by which these four people, in this case, bring the claim. There are certain circumstances, Your Honor, where the estate would be involved if there were a survival action. There was not evidence in this case that Mr. Karahadzic survived after this initial impact. If somebody survives, if it's for 10 minutes, a year, whatever it might be, the survival action would be brought by the estate and the money would be then paid to the estate. So in that case, you would have money in an estate. But in the case that we've got here, just under the Illinois Wrongful Death Act without a survival action, the money never flows through the estate. The estate is merely created to bring the action against the defendants. Can I ask you one factual question? Absolutely. What does the evidence tell us about whether any lights were on the trailer of the lead truck here? Whether they were on? I thought he unplugged the cable. Did he plug it back in? He did. My recollection of this, and understand Mr. Thompson's testimony was very equivocal and very difficult for anybody to understand, including the jury. But my understanding is he was driving on the road, looked in his side view mirror and saw on the side of his trailer that there was a light that was blinking that should not have been blinking. So he makes the decision to pull off the road where he did in the roadway. I understand that he got out of his truck, did a walk around, unplugged what's called the pigtail, it's the electrical connection between the trailer and the truck, plugged it back in, and he said after that everything was okay. So that's what we've got as far as lighting. And I don't know if the court would like me to address any of the other points that hadn't been... It doesn't look like there are any pending questions, Mr. Mason. Okay. All right. With that said, Your Honor, I'll take my leave. Thank you very much. The case is taken under advisement.